**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMUEL CARLISLE,<br><br>            Plaintiff,<br><br>       v.<br><br>SHIFT TECHNOLOGIES, INC., GEORGE ARISON, TOBY RUSSELL, MANISH PATEL, JASON KRIKORIAN, ADAM NASH, VICTORIA MCINNIS, and KELLYN SMITH KENNY,<br><br>            Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Samuel Carlisle ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Shift Technologies, Inc. ("Shift" or the "Company") and the members of Shift's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge the Company with CarLotz, Inc. ("CarLotz") (the "Proposed Transaction").

2. On August 9, 2022, the Company entered into an Agreement and Plan of Merger with Shift Remarketing Operations, Inc. ("Merger Sub"), a wholly owned subsidiary of Shift, and CarLotz (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, each outstanding share of CarLotz common stock will be converted into the right to receive 0.692158 of a share of Shift common stock. Upon completion of the Proposed Transaction (i) former CarLotz stockholders are expected to own approximately 49.99% of the issued and outstanding shares of Shift common stock and approximately 48.12% of the outstanding shares of Shift common stock on a fully diluted and as-converted to Shift common stock basis; and (ii) current Shift stockholders are expected to own approximately 50.01% of the issued and outstanding shares of Shift common stock and approximately 51.88% of the outstanding shares of Shift common stock on a fully diluted and as-converted to Shift common stock basis.

3. Under the Merger Agreement, Shift is required to issue approximately 85,783,606 additional shares of Shift common stock (the "Share Issuance"). As a Nasdaq listed company, Shift is required by Nasdaq listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock. Thus, the Proposed Transaction is contingent upon Shift shareholders voting to approve the proposed Share Issuance.

4. On November 8, 2022, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that Shift stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Shift, CarLotz and the combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (iii) potential conflicts of interest

faced by the Company's additional financial advisor, J.V.B. Financial Group, LLC, acting through its Cohen & Company Capital Markets division ("CCM"), and the Company's professional advisor, Deloitte Tax LLP and Deloitte & Touche LLP ("Deloitte").

5.   The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Shift stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

6.   The special meeting for Shift stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for December 7, 2022.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Shift's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.   Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Shift's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of Shift common stock.

11. Defendant Shift is a Delaware corporation, with its principal executive offices located at 290 Division Street, Suite 400, San Francisco, California 94103. Shift's shares trade on the Nasdaq Capital Market under the ticker symbol "SFT."

12. Defendant George Arison ("Arison") is a co-founder of Shift and has been Chairman of the Board and a director of the Company at all relevant times.

13. Defendant Toby Russell is a co-founder of Shift and has been a director of the Company at all relevant times.

14. Defendant Manish Patel has been a director of the Company at all relevant times.

15. Defendant Jason Krikorian has been a director of the Company at all relevant times.

16. Defendant Adam Nash has been a director of the Company at all relevant times.

17. Defendant Victoria McInnis has been a director of the Company at all relevant times.

18. Defendant Kellyn Smith Kenny has been a director of the Company at all relevant times.

19. Defendants identified in paragraphs 12-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

20.     Founded in 2013, Shift, together with its subsidiaries, provides an ecommerce platform for buying and selling used cars.  The Company operates in two segments: Retail and Wholesale.  It engages in the retail sale of used vehicles through its platform that enables mobile digital transaction, such as at-home car searching, scheduling an on-demand test drive, and purchasing at home or at the preferred site of a test drive, as well as provides financing and services.  Shift also provides value-added products, such as vehicle service contracts, guaranteed asset protection waiver coverage, wheel and tire coverage, prepaid maintenance plans, and appearance protection plans.  The Company is also involved in the sale of used vehicles through wholesale auctions or directly to a wholesaler.

**The Proposed Transaction**

21.     On August 9, 2022, Shift announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SAN FRANCISCO and RICHMOND, Va., Aug. 09, 2022 (GLOBE NEWSWIRE) -- Shift Technologies, Inc. (Nasdaq: SFT), a leading end-to-end ecommerce platform for buying and selling used cars, and CarLotz, Inc. (Nasdaq: LOTZ), a leading consignment-to-retail used vehicle marketplace, announced today that they have entered into a definitive agreement to combine in a stock-for-stock merger. The combined company will continue to trade on Nasdaq under the ticker SFT.
>
> The combination will create the destination for the best online and in-person used car purchasing experience, allowing the customer to seamlessly shop the broadest assortment of used vehicle inventory, and complete the transaction however they prefer.
>
> The merger brings together the most profitable assets of both companies. The two businesses have complementary geographies, with Shift's footprint concentrated on the West Coast, while CarLotz has built a strong presence in the mid-Atlantic region. CarLotz will be able to leverage Shift's proprietary inventory acquisition engine and at-home delivery offering to obtain differentiated inventory and expand

its geographic footprint, while Shift will be able to leverage CarLotz's presence to scale its dealer marketplace on the East Coast.

"The Shift and CarLotz teams have admired each other and our respective businesses for quite some time. We've always seen a considerable amount of strategic and cost synergies with a combined entity," said George Arison, Shift's Co-Founder and CEO. "We are strongly convinced that the merger will put us in a position to pursue a profitable future. As such, this is a transformative moment in Shift's history by enabling us to advance our vision to be the end-to-end destination for car ownership that controls its own destiny."

"While this is an exciting day for both companies, the merging of Shift and CarLotz will be most beneficial to consumers looking to buy or sell a used car," said Lev Peker, CEO of CarLotz. "Shift's technology and consumer sourcing abilities combined with our consignment and retail remarketing expertise will provide one extraordinary, omnichannel experience."

"We see immense opportunity in combining Shift's proprietary acquisition engine, which excels in buying cars from customers, with CarLotz's unique consignment relationships to create a truly differentiated inventory strategy," said Jeff Clementz, Shift's President and incoming CEO. "There's also potential to leverage Shift's back-end technology and online checkout flow at CarLotz's retail locations, to drive significant process and cost efficiencies."

Under the terms of the merger agreement, CarLotz shareholders are expected to receive approximately 0.692158 shares of Shift common stock for each share of CarLotz common stock. The actual exchange ratio will be adjusted at the closing based on Shift's issued and outstanding shares prior to the effective time of the merger, relative to the fully diluted CarLotz shares prior to the effective time of the merger. Based on the expected exchange ratio, upon the closing of the merger Shift's then-current equity holders will own approximately 52.9% of the combined company, and CarLotz's then-current equity holders will own approximately 47.1% of the combined company, calculated on a fully diluted basis. We expect the transaction to close in Q4 2022 subject to CarLotz's and Shift's shareholders' approvals and other customary and regulatory approvals.

Shift is advised by Centerview Partners and Cohen & Company Capital Markets, a division of J.V.B. Financial Group, LLC. as financial advisor and Jenner & Block LLP as legal counsel. CarLotz is advised by William Blair & Company as financial advisor and Freshfields Bruckhaus Deringer LLP as legal counsel.

**The Materially Incomplete and Misleading Prospectus**

22.     On November 8, 2022, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that Shift stockholders

vote their shares in favor of the Share Issuance and the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Shift, CarLotz and the combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Centerview; and (iii) potential conflicts of interest faced by the Company's additional financial advisor, CCM, and its professional advisor, Deloitte.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Shift, CarLotz and the Combined Company*

23. The Prospectus fails to disclose material information concerning the financial projections for Shift, CarLotz and the combined company.

24. Specifically, the Prospectus fails to disclose Shift's projected unlevered free cash flows for the years ending December 31, 2022 through December 31, 2031, utilized by Centerview in connection with its *Discounted Cash Flow Analysis* of Shift, and the underlying projection line items.

25. The Prospectus similarly fails to disclose CarLotz's projected unlevered free cash flows for the years ending December 31, 2022 through December 31, 2031, utilized by Centerview in connection with its *Discounted Cash Flow Analysis* of CarLotz, and the underlying projections line items.

26. Moreover, according to the Prospectus, in connection with the financial analyses underlying its fairness opinion, Centerview relied upon "certain financial forecasts, analyses and projections relating to CarLotz prepared by CarLotz management, **with adjustments made by Shift management**, and furnished to Centerview by Shift for purposes of Centerview's analysis[.]" Prospectus at 86 (emphasis added); *see also id.* at 102 ("The CarLotz standalone forecast was provided to Shift in connection with its consideration and evaluation of the Merger

7

and, following certain adjustments by Shift management, it was also provided to Shift's financial advisors, Centerview and CCM"). The Prospectus fails, however, to disclose any projections for CarLotz "with adjustments made by Shift management." Notably, the Prospectus fails to disclose any CarLotz projections for the years 2027 through 2031, although Centerview utilized projections for CarLotz through December 31, 2031.

27. Similarly, according to the Prospectus, as of July 18, 2022, "the Shift management team had begun preparation of a joint financial model for the Combined Company" and defendant Arison "proposed that both parties retain financial advisors to assist the companies on the Combined Company model[.]" *Id.* at 68. The Prospectus fails, however, to disclose a joint financial model for the post-close combined company.

28. The Prospectus further fails to disclose the line items underlying Adjusted EBITDA for Shift and CarLotz.

*Material Misrepresentations and/or Omissions Concerning Centerview's Financial Analyses*

29. The Prospectus fails to disclose material information concerning Centerview's financial analyses.

30. With respect to Centerview's *Discounted Cash Flow Analysis* of Shift, in addition to the unlevered free cash flows utilized, the Prospectus fails to disclose: (i) the projection metric to which exit multiples were applied to derive the terminal value and quantification thereof; (ii) Shift's terminal values; (iii) the estimated present value of future tax benefits available to Shift from net operating losses carried forward; (iv) Shift's net debt; (v) the inputs and assumptions underlying the discount rate range of 15.5% to 17.5%; and (vi) Shift's fully-diluted shares outstanding.

31. With respect to Centerview's *Discounted Cash Flow Analysis* of CarLotz, in addition to the unlevered free cash flows utilized, the Prospectus fails to disclose: (i) the projection metric to which exit multiples were applied to derive the terminal value and quantification thereof; (ii) CarLotz's terminal values; (iii) the estimated present value of future tax benefits available to CarLotz from net operating losses carried forward; (iv) the value of CarLotz's net cash and cash equivalents; (v) the inputs and assumptions underlying the discount rate range of 16.5% to 18.5%; and (vi) CarLotz's fully-diluted shares outstanding.

32. With respect to Centerview's *Selected Comparable Public Companies Analysis* of Shift, the Prospectus fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by Centerview; (ii) Shift's net debt; and (iii) Shift's fully-diluted shares outstanding.

33. With respect to Centerview's *Selected Comparable Public Companies Analysis* of CarLotz, the Prospectus fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by Centerview; (ii) CarLotz's net cash and cash equivalents; and (iii) CarLotz's fully-diluted shares outstanding.

*Material Misrepresentations and/or Omissions Concerning CCM's and Deloitte's Potential Conflicts of Interest*

34. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by CCM and Deloitte.

35. Specifically, the Prospectus fails to disclose the terms of CCM's engagement, including: (i) the amount of compensation CCM has received or will receive in connection with its engagement; (ii) the amount of CCM's compensation that is contingent upon consummation of the Proposed Transaction; and (iii) whether CCM has performed any services for any parties to

the Merger Agreement in the prior two years and, if so, the nature of the services performed and amount of compensation received.

36. In addition, in connection with the Company's due diligence during the process leading up to the Proposed Transaction, Deloitte acted as a professional advisor to Shift while simultaneously advising CarLotz in connection with its due diligence on the Proposed Transaction. For example, according to the Prospectus, on July 22, 2022, representatives of Deloitte participated in a due diligence session "in its capacity as professional advisor to Shift" and later at an August 7, 2022 Shift Board meeting, Shift management gave a presentation on certain results of Deloitte's due diligence investigation. *See id.* at 69, 75. According to the Prospectus, representatives of Deloitte also attended meetings of the CarLotz board of directors as a professional advisor of CarLotz during this same timeframe, including meetings held on July 31, 2022, August 4, 2022, August 8, 2022 and August 9, 2022. *See id.* at 71, 73, 75-77. Yet, the Prospectus fails to disclose any measures taken by the Board to safeguard against any conflict of interest presented by Deloitte's engagement on both sides of the deal. The Prospectus further fails to disclose: (i) the scope of Deloitte's engagement with each of Shift and CarLotz; (ii) the amount of compensation Deloitte has received or will receive in connection with its engagement for its services provided to each of Shift and CarLotz; (iii) the amount of Deloitte's compensation that is contingent upon consummation of the Proposed Transaction; and (iv) whether Deloitte has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the nature of the services performed and amount of compensation received.

37. In sum, the omission of the above-referenced information renders statements in the "Shift Unaudited Prospective Financial Information," "CarLotz Unaudited Prospective Financial Information," "Opinion of Shift's Financial Advisor" and "Background of the Merger" sections of

the Prospectus materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Shift will be unable to make a sufficiently informed decision in connection with the Share Issuance and the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Shift**

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Shift is liable as the issuer of these statements.

40. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

41. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and the Proposed Transaction. In addition, a reasonable investor will view a full and

accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

43. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

44. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Shift within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Shift and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

50. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Shift, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Share Issuance, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 15, 2022     **ACOCELLI LAW, PLLC**

              By */s/ Richard A. Acocelli*
                 Richard A. Acocelli
                 33 Flying Point Road, Suite 131
                 Southampton, NY 11968
                 Tel: (631) 204-6187
                 Email: racocelli@acocellilaw.com

                 *Attorneys for Plaintiff*